UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| VICKI FRANK and <br> VINCENT ANTONUCCI <br>     Plaintiffs <br> <br> v. <br> <br> NAPOLI INDOOR AUTO OUTLET, LLC <br> D/B/A NAPOLI KIA AND GENERAL <br> MOTORS FINANCIAL COMPANY, INC. <br>     Defendants | CIVIL ACTION NO. <br> <br> <br> <br> TRIAL BY JURY DEMANDED <br> <br> <br> <br> <br> OCTOBER 18, 2017 |

## **COMPLAINT**

### I.   INTRODUCTION

1.  This is a suit brought by two consumers under the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. §§ 2301 *et seq.*, and Article 2 of the Uniform Commercial Code ("UCC"), Conn. Gen. Stat. §§ 42a-2-101 *et seq.*, against Napoli Indoor Auto Outlet, LLC d/b/a Napoli Kia ("Napoli Kia"), a car dealership that fraudulently and maliciously sold Plaintiffs a 2013 Kia Optima (the "Vehicle") as a "Certified Pre-Owned" ("CPO") vehicle, even though the Vehicle had previously been in an event that caused severe structural damage and that had not been properly repaired and restored, resulting in a condition that rendered the Vehicle unmerchantable and ineligible for inclusion in Kia's CPO program.  Furthermore, the Plaintiffs assert claims for violations of the Truth in Lending Act, 15 U.S.C. § 1640, and pendent state law claims for violations of the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. § 42-110a *et seq.*

## II.  PARTIES

1. Plaintiff, Vicki Frank ("Frank"), is a natural person residing in Milford, Connecticut, and she is a "consumer" as that term is defined in §2301(3) of MMWA.

2. Plaintiff, Vincent Antonucci ("Antonucci"), is a natural person residing in Milford, Connecticut, and he is Frank's fiancé, and he is a "consumer" as that term is defined in §2301(3) of MMWA.

3. Napoli Kia is a Connecticut corporation that operates a motor vehicle dealership in Milford, Connecticut.  It is an authorized dealership for Kia and is a warrantor as that term is defined in §2301(5) of MMWA.

4. General Motors Financial Company, Inc. ("GM Financial") is a Texas corporation with a principal place of business in Fort Worth, Texas, and it is a finance company that accepts assignment of retail installment sales contracts.

## III. JURISDICTION

5. Jurisdiction in this Court is proper pursuant to 15 U.S.C. § 2310(d)(1)(B) and 15 U.S.C. § 1640. Supplemental jurisdiction exists for the state law claims pursuant to 28 U.S.C. § 1367.

6. This Court has jurisdiction over Napoli Kia because it is incorporated and located in Connecticut and regularly does business in Connecticut.

7. This Court has jurisdiction over GM Financial because it regularly does business in Connecticut.

8. Venue in this Court is proper, because Plaintiffs reside in this state and the transaction alleged herein occurred in this state.

## IV. FACTUAL ALLEGATIONS

9. Kia Motor Corporation and its dealerships, including Napoli Kia, promote Kia's Certified Pre-Owned program ("CPO") as a means of marketing pre-owned vehicles.

10. Vehicles included in the CPO program are represented by Kia and the participating dealership as having been subjected to a comprehensive 150-point quality assurance inspection to ensure that they meet the program's stringent certification criteria.

11. On or about May 27, 2017, Plaintiffs were interested in purchasing a vehicle, and they went to Napoli Kia.

12. Plaintiffs were interested in purchasing a CPO vehicle, in part, because they believed that CPO vehicles went through rigid and thorough inspections by the dealership and that they were of higher quality than comparable used vehicles that had not been certified.

13. Napoli Kia showed Plaintiffs a 2013 Kia Optima (the "Vehicle") and told them the Vehicle was CPO and had been subjected to the 150-point inspection.

14. Frank tried to negotiate the price of the Vehicle based upon a similar vehicle for sale at another dealership, but Napoli Kia told her that CPO vehicles cost more and that she would not find a CPO Optima at the price which Napoli Kia was selling the Vehicle.

15. Frank asked Napoli Kia to provide her with a copy of a Carfax report on the Vehicle. Instead, Napoli Kia provided Frank with a report from AutoCheck.

16. Unbeknownst to Frank, the AutoCheck report failed to disclose any accidents for the Vehicle, but Carfax report did report a prior accident involving the Vehicle.

17. Napoli Kia's provision of an AutoCheck report was contrary to Kia's policy that purchasers of CPO vehicles are to be provided with a Carfax report.

18. In reliance upon the assertions and representations by Napoli Kia regarding the CPO program and the Vehicle, and based upon the AutoCheck report provided by Napoli Kia that did not show any accidents, Plaintiffs decided to purchase the Vehicle.

19. Napoli Kia prepared a Purchase Order which included a fee of $2,500 for a service contract.

20. Antonucci asked Napoli Kia about the service contract, because the Vehicle was warrantied by Kia under the CPO program, and Plaintiffs did not want to purchase the service contract. Napoli Kia told Antonucci that "the bank" required Plaintiffs to purchase the service contract.

21. Napoli Kia failed to provide Plaintiffs with a copy of the Purchase Order despite their requests.

22. Plaintiffs paid a down payment of $3,300 and they financed a balance of $12,095.92 pursuant to a retail installment contract (the "Contract") that was assigned by Napoli Kia to Americredit Financial Services, which later became GM Financial.

23. The Contract listed a cash sale price of $12,106.92 including $907.92 in sales tax.

24. The Contract included a charge of $2,500 for a service contract that Plaintiffs neither requested nor desired.

25. Plaintiffs were not provided with a copy of the CPO checklist despite repeated requests.

26. Plaintiffs took delivery of the Vehicle on May 27, 2017. At the time of delivery, it was raining outside and the weather prevented Plaintiffs from inspecting the exterior of the Vehicle.

27. After taking delivery, once the rain stopped, Plaintiffs noticed damage to the rear of the Vehicle.

28. Plaintiffs brought the Vehicle back to Napoli Motors on May 29, 2017 and complained of the condition of the Vehicle's exterior, and they asked Napoli Kia to take the Vehicle back and to show them other vehicles in their price range.

29. Plaintiffs also requested that Napoli Kia run a Carfax report. Napoli Kia ran the report, which showed the prior accident.

30. Initially, Napoli Kia agreed to sell Plaintiffs another Vehicle, and it showed them a Nissan, however, ultimately Napoli Kia refused to work with the Plaintiffs.

31. Plaintiffs brought the Vehicle to their mechanic to have it inspected, and the mechanic told Plaintiffs the Vehicle had been repainted.

32. On or about August 14, 2017, Plaintiffs had the Vehicle inspected by an independent auto body expert to obtain an assessment of the extent of any prior damage.

33. The independent expert determined that the Vehicle had extensive damage and structural damage, had been poorly repaired, and had existing defects, including a swayed front upper and improperly fitting body panels.

34. The independent expert opined that the Vehicle is unsafe to drive due to structural damage, that it was not in merchantable condition, that the Vehicle was ineligible for certification under Kia's CPO guidelines, and that any automotive professional performing a simple visual inspection could clearly see that the Vehicle had been wrecked and poorly repaired.

35. None of this damage had occurred subsequent to the delivery of the Vehicle to Plaintiffs.

36. Because of the extent of the improper repairs and unrepaired damage, the Vehicle did not meet the criteria for certification under Kia's CPO program at the time of sale to Plaintiffs.

37. As a consequence of the defects, the Vehicle had a value of approximately $5,500 less than the value of a comparable vehicle that satisfied the criteria for Kia's CPO program.

38. A cursory inspection by anyone experienced in the automotive trade would have revealed the defects and refinishing.

39. Plaintiffs had accepted delivery of the Vehicle unaware of its defects.

40. On or about August 28, 2017, Plaintiffs returned the Vehicle to Napoli Kia.

41. On August 29, 2017, Plaintiffs, by their attorney, notified Napoli Kia and GM Financial that they had revoked their acceptance of the Vehicle.

6

42. Defendants have failed and refused to refund to Plaintiffs their deposit or the amounts that they paid under the Contract.

43. GM Financial is subject to Plaintiffs' claims and defenses against Napoli Kia in accordance with the terms of the retail installment contract and pursuant to Conn. Gen. Stat. § 52-572g.

## V.  CAUSES OF ACTION

### A.  BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

44. The Vehicle is a consumer product as that term is defined in § 2301(1) of the MMWA (15 U.S.C. §§ 2301-2312).

45. A warranty that the Vehicle was in merchantable condition at the time of sale was implied by the Contract by operation of Conn. Gen. Stat. § 42a-2-314.

46. Napoli Kia breached the implied warranty of merchantability, Conn. Gen. Stat. § 42a-2-314, in that the Vehicle was not in merchantable condition at the time of sale because it had structural damage that made it unsafe to drive and it would not pass in trade without objection under the description of a Certified Pre-Owned 2013 Kia Optima.

47. Napoli Kia knew, or reasonably should have known, based on its expertise in the sale and certification of used Kia vehicles, that the Vehicle did not meet the standards for "Certified Pre-Owned" status and that it was not in merchantable condition.

48. It is not possible for Napoli Kia to cure the breach of implied warranty of merchantability, or Plaintiffs provided Napoli Kia with a reasonable opportunity to cure the breach of implied warranty but it has not done so, or both.

49. Napoli Kia's breaches of the implied warranty of merchantability were tortious in nature, in bad faith, were wanton and malicious, outrageous, and were undertaken with bad motive and with a reckless indifference to the Plaintiffs' interests and the injury that they sustained.

50. Specifically, Napoli Kia falsely represented that the Vehicle had passed the CPO inspection and falsely certified that the Vehicle met the criteria for certification.

51. Plaintiffs are entitled to an order that they validly and effectively revoked acceptance of the Vehicle.

52. As a result of the above-described actions, Napoli Kia and GM Financial are also liable to Plaintiffs for their damages, including common law punitive damages, which are estimated to exceed $50,000, and attorney's fees and costs.

## B.  BREACH OF EXPRESS WARRANTY

53. Napoli Kia made affirmations of fact or promise relating to the Vehicle that became part of the basis of the bargain and that created express warranties pursuant to Conn. Gen. Stat. § 42a-2-313(a).

54. Specifically, Napoli Kia represented that the Vehicle had undergone the necessary inspections and met the requisite criteria to be designated as a "Kia Certified Pre-Owned" vehicle.

55. Napoli Kia's representations that the Vehicle was a CPO vehicle constituted a description of the Vehicle that was part of the basis of the bargain, i.e., that the Vehicle satisfied the rigorous requirements for certification under Kia's CPO program, and this description became part of the basis of the bargain.

56. Either Napoli Kia did not conduct the inspection required for certification, or it had so imperfectly conducted the inspection that it constituted a failure to inspect, or it knowingly certified a Vehicle that did not meet the criteria for certification under Kia's CPO program.

57. Napoli Kia has breached its express warranty as aforedescribed.

58. Napoli Kia's breaches of express warranties were tortious in nature, in bad faith, were wanton and malicious, outrageous, and were undertaken with bad motive and with a reckless indifference to the Plaintiffs' interests and the injury that they sustained.

59. Plaintiffs are entitled to an order that they validly and effectively revoked acceptance of the Vehicle.

60. As a result of the above-described actions, Napoli Kia and GM Financial are liable to Plaintiffs for their damages, including common law punitive damages.

### C. TRUTH IN LENDING ACT (Napoli Kia)

61. Napoli Kia violated TILA by requiring that Plaintiffs purchase a service contract as a condition of financing the transaction and by failing to disclose the cost of the service contract, which cost was imposed as a condition of financing and would not have been charged in a cash transaction, as a finance charge.

62. Plaintiffs are entitled to actual damages plus additional statutory damages of $2,000, and a reasonable attorney's fee pursuant to 15 U.S.C. § 1640.

### D.     CONNECTICUT UNFAIR TRADE PRACTICES ACT

63.     Through its above-described actions, Napoli Kia acted deceptively or unfairly or both, and violated CUTPA in the following ways:

a. Its TILA violations;

b. It made false statements that it had inspected this Vehicle and that it had passed the 150+ point inspection;

b. Its promotion of Kia's CPO program when it does not regularly conduct the 150+ point inspection as described therein; and

c. Its failure to provide Plaintiffs with a copy of the Purchase Order, the Carfax Report, and the CPO checklist.

64.     Additionally, because the defects in the Vehicle were apparent to any automotive professional, Napoli Kia's certification regarding the Kia CPO program was false, fraudulent, and issued in bad faith.

65.     Napoli Kia has engaged in unfair and deceptive acts in violation of CUTPA for which Plaintiffs have suffered an ascertainable loss of money and property, including, but not limited to, the purchase of a Vehicle that was worth substantially less than the amount that it would be worth if the representations had been true.

66.     For Napoli Kia's violations of CUTPA, the Plaintiffs are entitled to damages, attorney's fees and costs, and, in the discretion of the court, punitive damages.

WHEREFORE, Plaintiffs claim actual damages, common law and statutory punitive damages, TILA statutory damages of $2,000, costs, reasonable attorney's fees, an order that the retail installment contract was validly and effectively revoked and that no sums are due to GM Financial; and such other relief to which the Plaintiffs are, at law, or in equity and by statute, entitled to against defendants.

                                  PLAINTIFFS, VICKI FRANK and
                                  VINCENT ANTONUCCI

                        By: /s/ *Daniel S. Blinn*
                              Daniel S. Blinn (ct02188)
                              dblinn@consumerlawgroup.com
                              Consumer Law Group, LLC
                              35 Cold Spring Rd. Suite 512
                              Rocky Hill, CT  06067
                              Tel.  (860) 571-0408
                              Fax. (860) 571-7457